# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| MICHELLE RICHARDSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action No. 3:14-cv-01505 |
| v. | ) | Judge Trauger / Knowles |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 12. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 13.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I.  INTRODUCTION

Plaintiff filed her applications for DIB and SSI on September 24, 2010, alleging that she

had been disabled since September 22, 2010, due to neuralgia, spondylosis in the left shoulder, depression, and migraine headaches.  Docket No. 10, Attachment ("TR"), TR 153-54, 155-58, 181.  Plaintiff's applications were denied both initially (TR 85, 86) and upon reconsideration (TR 87, 88).  Plaintiff subsequently requested (TR 111-13) and received (TR 34-84) a hearing. Plaintiff's hearing was conducted on March 28, 2013, by Administrative Law Judge ("ALJ") Elizabeth P. Neuhoff.  TR 34-84.  Plaintiff and vocational expert ("VE"), Melissa Neel, appeared and testified. *Id.*

On April 19, 2013, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 17-28.  Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.

2. The claimant has not engaged in substantial gainful activity since September 22, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: mild degenerative changes of the lumbar spine, scoliosis of the cervical spine, left shoulder pain, migraines, mild left carpel tunnel syndrome, major depressive disorder, and polysubstance abuse (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift and/or carry

20 pounds occasionally and ten pounds frequently. She can sit, stand, or walk six hours total each. She would be better if offered a sit/stand option. She can perform no overhead work with the left upper extremities. She can occasionally perform all postural activities. She can have no exposure to hazards in the workplace, including excessive (jackhammer level) noise or excessively bright lights. She is limited to simple unskilled work consisting of one to two step tasks and instructions. She can attend to and complete such tasks and instructions. She can handle occasional change in the workplace, routine setting, or location. She can perform no production pace or quota type work.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.     The claimant was born on December 16, 1980 and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the regional and national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from September 22, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 19-28.

On May 20, 2013, Plaintiff timely filed a request for review of the hearing decision. TR 9-10. On May 21, 2014, the Appeals Council issued a letter declining to review the case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been

further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980)).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in

5

significant numbers regardless of whether such work exists in the immediate area in which

Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he

or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 CFR §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181

(6th Cir. 1990).

---

[1] The Listing of Impairments is found at 20 CFR, Pt. 404, Subpt. P, App. 1.

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by failing to properly: (1) consider the opinion of her treating source, Sheena Jordan, NP; (2) consider all of her impairments and provide sufficient reasons for not finding impairments "severe"; and (3) include a function-by-function assessment in the RFC assessment. Docket No. 12-1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and
> transcript of the record, a judgment affirming, modifying, or
> reversing the decision of the Commissioner of Social Security,
> with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

### 1. Medical Source Statement Opinion of Nurse Practitioner Sheena Jordan

Plaintiff argues that the ALJ failed to properly consider the Medical Source Statement ("MSS") completed by treating Nurse Practitioner Sheena Jordan. Docket No. 12-1 at 6. Plaintiff notes that Nurse Jordan, in her MSS, opined that Plaintiff: (1) could not sit, stand, or walk for a full eight-hour day, resulting in a less-than-sedentary RFC; (2) would require the opportunity to lie down at unpredictable intervals; and (3) would be absent from work three days per month as a result of her conditions. *Id.* at 9, *citing* TR 459. Plaintiff contends that the ALJ "gave no reason for discounting [Nurse Jordan's] opinion except for mentioning that she is not an acceptable medical source," but argues that the ALJ should have accorded greater weight to Nurse Jordan's opinion because she is Plaintiff's treating source and has examined her. *Id.* at 9-

11.  Plaintiff maintains that although the ALJ claimed to accord weight to Nurse Jordan's opinion, "a review of the RFC confirms that she in fact gave no weight to the opinion" and "clearly shows that it was not considered." *Id.* at 9, 11.  Plaintiff notes that the ALJ posed a hypothetical question to the VE that was based on Nurse Jordan's MSS opinion, and argues that, "if [the ALJ] in fact gave weight to the opinion of Nurse Jordan, then there would have been no jobs that the Plaintiff could perform, as confirmed by the Vocational Expert." *Id.*  Plaintiff contends, therefore, that the ALJ failed to comply with SSR 06-03p. *Id.* at 11.

Defendant responds that the ALJ properly considered Nurse Jordan's MSS opinion and "determined that it was due some weight, but could not be wholly adopted as it was excessively limiting compared to the record as a whole." Docket No. 13 at 4.  Defendant explains that part of Nurse Jordan's opinion "was apparently based on short-term injuries sustained while Plaintiff had 'been lifting & moving heavy objects' including moving a TV and perhaps working at a job that required heavy lifting." *Id.* at 8, *referencing* TR 218, 488, 496.  Defendant contends that the ALJ did not entirely reject Nurse Jordan's opinion, but rather, "accepted it to the extent that it was consistent with the record [as] a whole," and further argues that she properly explained her rationale for the parts she accepted. *Id.* at 7-9.  Defendant notes that the ALJ ultimately found and incorporated "the need for a sit/stand work option, postural restrictions, and limitations in overhead lifting." *Id.*, *referencing* TR 25-26.

Defendant additionally responds that although opinions from "other sources" are to be considered, they are "not entitled to any special deference." *Id.* at 4-5.  Defendant also notes that, at the time Nurse Jordan completed her MSS, she had seen Plaintiff on only two occasions, thereby rendering Nurse Jordan's "treating status [] somewhat questionable." *Id.* at 6.  Defendant

9

reiterates its response that the ALJ properly considered Nurse Jordan's "other source" opinion and explained why it was due only some weight. *Id.* at 9, *referencing* TR 26.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. . . .
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. . . .
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her

area of specialty than to the opinion of a source who is not a
specialist.

. . .

20 CFR § 416.927(d).  *See also* 20 CFR § 404.1527(d).

The ALJ must articulate the reasons underlying her decision to give a medical opinion a specific amount of weight.[2]  *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight.  SSR 96-2p.

The Sixth Circuit has held that, "provided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002)(*quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)).  If the ALJ rejects the opinion of a treating source, she is required to articulate some basis for rejecting the opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Code of Federal Regulations defines a "treating source" as:

[Y]our own physician, psychologist, or other acceptable medical
source who provides you or has provided you, with medical

---

[2] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record.  *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. April 28, 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 CFR § 404.1502.

Although nurse practitioners are "other sources" who are not "acceptable medical sources" as defined by the SSA, the Regulations provide that the ALJ may nevertheless properly:

> use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to -
>
> (1) Medical Sources not listed in paragraph (a) of this section (for example, *nurse-practitioners*, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists).

20 CFR § 404.1513(d) (emphasis added).

When considering "other source" opinions, the ALJ's decision should:

> . . . reflect the consideration of [these] opinions . . . Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources,"  . . .  when such opinions may have an effect on the outcome of the case.

SSR 06-03p.

With regard to the ALJ's evaluation of the weight accorded to "other source" opinions, SSR 06-03p provides:

> The evaluation of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.
>
> The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater

weight than an opinion from a medical source who is not an "acceptable medical source" because . . . "acceptable medical sources" "are the most qualified health care professionals." However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

*Id*.

In the case at bar, the ALJ discussed Nurse Jordan's MSS opinion and the weight accorded thereto as follows:

Weight is given to the opinion of nurse practitioner Sheena Jordan of Due West Family Healthcare regarding the claimant's need for a sit/stand option, her postural limitations, and her limitations regarding reaching overhead. Exhibit 22F. Ms. Jordan is not an acceptable medical source, but did have a treating relationship with the claimant at Due West Family Healthcare. Exhibit 24F. However, the undersigned finds the other limitations assessed by Ms. Jordan to be excessive when compared to the record as a whole. The claimant generally had full range of motion throughout, and when she was limited, she was generally mildly limited. She had a normal gait. Her imaging showed some degeneration in her lumbar spine, but her most severe problem was her congenital fusion in her thoracic spine, and this was something she had always had. Due to the claimant's headaches, and one mention of hearing loss, the undersigned added the limitations relating to bright lights and excessive noise. Due to her left sided neuropathy symptoms, the undersigned added the limits to reaching overhead with her left upper extremity. However, as discussed in this decision, the medical findings and her work activity support no more limitations than what are given.

TR 26, *citing* TR 459-60, 494-99.

Contrary to Plaintiff's assertion that the ALJ did not properly evaluate Nurse Jordan's MSS opinion, as can be seen, the ALJ was aware of, and explicitly acknowledged, Nurse Jordan's treating relationship with Plaintiff. Additionally, the ALJ specifically discussed Nurse Jordan's opinion, articulated the weight accorded to that opinion, and explained her rationale for the weight she accorded thereto. As explained, the ALJ accepted Nurse Jordan's opinion regarding "the claimant's need for a sit/stand option, her postural limitations, and her limitations regarding reaching overhead," but discounted the other limitations opined by Nurse Jordan because they were "excessive when compared to the record as a whole." *Id.*, *citing* TR 459-60.

Although Plaintiff argues that the ALJ should have accepted Nurse Jordan's MSS opinion in its entirety, should have accepted the VE's answer to the ALJ's hypothetical question posed reflecting Nurse Jordan's MSS opined limitations, and should have accorded greater weight to Nurse Jordan's opinion because she had examined Plaintiff and was Plaintiff's treating source, the Regulations do not so require. As set forth above, Nurse Jordan is an "other source" who is not an "acceptable medical source" whose opinion is automatically due great or controlling weight. Additionally, as discussed above, the Regulations do not require an ALJ to give greater weight to a treating source's opinion when that opinion is inconsistent with, or unsupported by, substantial evidence in the record. *See* 20 CFR § 416.927(d)(2) and 20 CFR § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating source's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* Furthermore, an ALJ may proffer to a VE several hypothetical questions incorporating various combinations of impairments. Because the hypothetical questions incorporate different combinations of impairments, the VE may answer each question differently. The ALJ is to consider the VE's

answers but is not bound to accept any one particular answer, as the Regulations do not require that an opinion be accepted in its entirety. Rather, as will be discussed in greater detail below, the ALJ is charged with ultimately making a credibility determination, and the ALJ is bound only to accept those limitations she deems to be consistent with, and supported by, the evidence of record. *See, e.g., Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997) (*citing Bradley v. Sec'y of Health & Human Servs.,* 862 F.2d 1224, 1227 (6th Cir. 1988)); *cf. King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 921 (6th Cir. 1987)). Accordingly, the ALJ did not have to accept Nurse Jordan's MSS opinion in its entirety, accept the VE's answer to the ALJ's hypothetical question posed reflecting Nurse Jordan's MSS opined limitations, or accord greater weight to Nurse Jordan's opinion because she had examined Plaintiff and was Plaintiff's treating source.

Contrary to Plaintiff's claims that the ALJ "gave no reason for discounting [Nurse Jordan's] opinion except for mentioning that she is not an acceptable medical source," the ALJ not only articulated that she discounted Nurse Jordan's other opined limitations because they were "excessive when compared to the record as a whole," but also specifically discussed inconsistences between Nurse Jordan's opinion and the record. TR 26, *citing* TR 459-60, 494-99. As the ALJ in the instant action explained, Nurse Jordan opined greater limitations than what the medical findings and Plaintiff's work activity showed. Because the ALJ considered the evidence in its entirety, articulated the weight accorded to Nurse Jordan's opinion, and explained the reasons therefor, Plaintiff's argument fails.

## 2. Consideration of Plaintiff's "Severe" Impairments, and Inclusion in the RFC

Plaintiff argues that the ALJ failed to properly consider all of her severe impairments.

Docket No. 12-1 at 11.  Specifically, Plaintiff argues that the ALJ did not properly consider Plaintiff's neuralgia or provide sufficient reasons for not finding her neuralgia to be "severe."  *Id.* at 12.  Plaintiff notes that she has been diagnosed with neuralgia; that her diagnosis of neuralgia is well-documented in the record; and that her neuralgia "causes more than a slight abnormality on [her] ability to function."  *Id.*

Plaintiff also contends that the ALJ "committed reversible error" by finding Plaintiff's left carpal tunnel syndrome to be a severe impairment, but failing to include in her RFC determination any related limitations.  *Id.* at 12.  Plaintiff argues that there is "significant evidence in the record that the condition would be expected to cause substantial work-related limitations," such that the ALJ's failure to include in her RFC determination any limitations regarding Plaintiff's left carpal tunnel syndrome renders the ALJ's decision "internally inconsistent."  *Id.* Plaintiff asserts that "the case must be remanded to the ALJ for further analysis" to clarify this "internal inconsisten[cy]."  *Id.*

Defendant argues that the ALJ was aware of Plaintiff's diagnosis of neuralgia and discussed it in her decision. Docket No. 13 at 10, *referencing* TR 23-24, 44.  Defendant further argues that Plaintiff does not allege any specific limitations resulting from her neuralgia beyond those already considered by the ALJ.  *Id.* at 11.  Defendant notes that Plaintiff has the burden of showing that her neuralgia is both medically determinable and causes work-related limitations in functioning, and argues that Plaintiff has failed to meet that burden. *Id.* at 10. Defendant also contends that "the 'failure to find additional severe impairments...does not constitute reversible error" so long as the ALJ considered all of Plaintiff's impairments.  *Id.*, *citing Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013).

With regard to Plaintiff's left carpal tunnel syndrome, Defendant responds that the ALJ considered the relevant evidence and noted that Plaintiff had good grip strength upon testing and had a diagnosis consistent with "mild" carpal tunnel syndrome. *Id.* at 12, *citing* TR 24. Defendant also argues that the ALJ properly "consider[ed] the combination of impairments once an impairment [was found to be] severe," and that the ALJ's RFC accommodated the combined limitations attributable to all of Plaintiff's impairments. *Id.* Specifically, Defendant contends that "any minimal impairment caused by the mild carpal tunnel syndrome" was accommodated by the ALJ's limitations of lifting no more than 20 pounds and performing no overhead work with the left arm. *Id.* at 12, *referencing* 20 CFR § 404.1523. Defendant further notes that Plaintiff does not allege that any additional restrictions are warranted by her carpal tunnel syndrome, nor does she cite to any medical evidence or opinions that show greater limitations than those included by the ALJ. *Id.*

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR § 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the Regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities; conversely, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. *Id.*; 20 CFR §§ 404.1521(a), 416.920(c), 416.921(a). The Sixth Circuit has described the severity determination as "a de minimis hurdle" in the disability determination process, the goal of which is to screen out groundless claims. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985).

Where the ALJ finds that the claimant has at least one severe impairment and proceeds to complete the sequential evaluation process, however, the ALJ's failure to find that another condition is a severe impairment cannot constitute reversible error. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

The ALJ in the instant action found that Plaintiff has the following severe impairments: mild degenerative changes of the lumbar spine, scoliosis of the cervical spine, left shoulder pain, migraines, mild left carpal tunnel syndrome, major depressive disorder, and polysubstance abuse. TR 19-20. Because the ALJ specifically found that Plaintiff had at least one severe impairment and completed the sequential evaluation process, the ALJ's alleged failure to find Plaintiff's neuralgia "severe" cannot constitute grounds for reversal. *See Maziarz*, 837 F.2d at 244. Moreover, the ALJ's decision demonstrates that she was aware of, and considered, Plaintiff's neuralgia, as she referenced it numerous times in her decision. TR 23-24. Accordingly, Plaintiff cannot prevail on this ground.

Regarding Plaintiff's argument that the ALJ committed reversible error when she found Plaintiff's left carpal tunnel syndrome "severe" at step two, but failed to include any limitations resulting from it in her RFC finding, as discussed above, a step two finding of severity is a "de minimis hurdle" in the disability determination process, the goal of which is to screen out groundless claims. *Higgs*, 880 F.2d at 862; *Farris*, 773 F.2d at 89. An impairment or combination of impairments is "severe" within the meaning of the Regulations at step two if it significantly limits a claimant's physical or mental ability to perform basic work activities. 20 CFR § 404.1520(c). *See also* SSR 96-3p. The "significant" limitation standard is liberally construed in favor of the claimant. *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428

(6th Cir. 2007).

In contrast, determining a claimant's limitations for purposes of establishing her RFC occurs in steps four and five of the sequential evaluation process and requires consideration of the combined effect of a claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B); 20 CFR §§ 404.1520, 404.1545, 416.920. A claimant's RFC is defined as the "*maximum degree* to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR Pt. 404, Subpt. P, App. 2 § 200.00(c) (emphasis added). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

A claimant's severe impairment does not necessarily affect his or her functional capacity for work activity. *See Griffeth*, 217 F. App'x at 429 ("A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.") (*quoting Yang v. Comm'r of Soc. Sec.*, No. 00-10446-BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004)). In determining a claimant's RFC, the ALJ considers the total limiting effects of all medically determinable impairments, both severe and non-severe. 20 CFR § 404.1545(e); *see also White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009)

("Once one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe."). The ALJ considers all relevant medical and other evidence, including statements by medical sources regarding claimant's abilities and statements by the claimant describing the severity of his or her symptoms. 20 CFR § 404.1545(a)(3).

In the instant case, the ALJ included the following limitations in her RFC determination:

> She can lift and/or carry 20 pounds occasionally and ten pounds frequently. She can sit, stand, or walk six hours total each. She would be better if offered a sit/stand option. She can perform no overhead work with the left upper extremities. She can occasionally perform all postural activities. She can have no exposure to hazards in the workplace, including excessive (jackhammer level) noise or excessively bright lights. She is limited to simple unskilled work consisting of one to two step tasks and instructions. She can attend to and complete such tasks and instructions. She can handle occasional change in the workplace, routine setting, or location. She can perform no production pace or quota type work.

TR 21.

With regard to the ALJ's consideration of Plaintiff's left carpal tunnel syndrome, the ALJ discussed Plaintiff's left carpal tunnel syndrome as follows:

> On September 28, 2010, the claimant was seen at Due West Family Healthcare for complaints of left arm and shoulder pain. A left hand tremor was noted. She was prescribed Toradol.
>           . . .
>
> The claimant attended a consultative physical examination by Dr. Bruce Davis on December 8, 2010. . . . Her left upper extremity showed normal motion in the . . . wrist, and fingers, with good grip of 4-5/5 *without tremor* or atrophy.
>           . . .
>
> The claimant's electromyogram performed on February 2, 2011

was consistent with mild left carpal tunnel syndrome.

TR 24, *referencing* TR 278, 298, 347.

The ALJ also noted that Plaintiff had displayed no tremor at her consultative physical examination on December 8, 2010. TR 24, *referencing* 298. The ALJ further discussed the opinions of Drs. Moore and Dr. Marsolek, who both concluded that Plaintiff had no manipulative limitations. TR 25-26, *referencing* TR 322, 422. As set forth above, the ALJ additionally discussed the opinion of Nurse Jordan, who likewise concluded that Plaintiff had no manipulative limitations. TR 26, *referencing* TR 460. Moreover, Plaintiff does not allege any additional restrictions or limitations resulting from her left carpal tunnel syndrome, and the record reflects that no medical source opined any specific limitations or restrictions due to her left carpal tunnel syndrome. TR 329-36, 419-26, 459-60.

The ALJ, in her RFC determination, specifically found that Plaintiff could "lift and/or carry 20 pounds occasionally and ten pounds frequently," could "perform no overhead work with the left upper extremities," and could "perform no production pace or quota type work." TR 21. Based on the evidence of record, the ALJ could reasonably conclude that Plaintiff's RFC did not require additional limitations attributable to Plaintiff's "mild" left carpal tunnel syndrome beyond those encompassed above. Accordingly, the ALJ did not err in her consideration of Plaintiff's "mild" carpal tunnel syndrome.

### 3. Function-By-Function Assessment Required by SSR 96-8p

Plaintiff maintains that the ALJ erred by failing to include a function-by-function assessment in the RFC assessment as required by SSR 96-8p. Docket No. 12-1 at 13-14. Specifically, Plaintiff argues that the ALJ failed to separately consider each of the seven strength

demands of sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id.* at 13. Plaintiff

further argues that the ALJ failed to "include substantial limitations in the RFC finding

correlating to symptoms and limitations which were well-documented in the record." *Id.* at 14.

Defendant responds that the ALJ's RFC finding and analysis were proper and in

accordance with SSA's regulations and policies, as well as Sixth Circuit case law. Docket No. 13

at 12. Defendant contends that the RFC is meant "'to describe the claimant's residual abilities or

what the claimant can do, not what maladies a claimant suffers from – though the maladies will

certainly inform the ALJ's conclusion about the claimant's abilities.'" *Id.* at 13, *quoting*

*Stankoski v. Astrue*, 532 F. App'x 614 (6th Cir. 2013). Defendant argues that SSR 96-8p's

requirement to perform a function-by-function RFC evaluation "need not be in any particular

format and need not follow a linear or checklist type format as Plaintiff may prefer." *Id.* at 14.

Defendant further argues that "SSR 96-8p clearly states that the ALJ must consider each function

separately; it does not state that the ALJ must discuss each function separately in the narrative of

the ALJ's decision," and notes that the Sixth Circuit does not require a step-by-step narrative of a

claimant's functional limitations. *Id.* (internal citations omitted). Defendant maintains, instead,

that an ALJ complies with SSR 96-8p when "she fully specifies the claimant's exertional and

non-exertional abilities and discusses the limitations that were at issue." *Id.*, *citing Winslow v.*

*Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014); *Delgado v. Comm'r of Soc. Sec.*, 30

F. App'x 542, 547-48 (6th Cir. 2002). Defendant contends that "'it was the ALJ's prerogative to

include only those limitations that [s]he found to be credible and well supported by the record.'"

*Id., quoting Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

As discussed above, RFC is defined as the "maximum degree to which the individual

retains the capacity for sustained performance of the physical-mental requirements of jobs." 20

CFR Pt. 404, Subpt. P, App. 2 § 200.00(c).

In the case at bar, after evaluating all of the objective and testimonial evidence of record

and Plaintiff's reported level of activity, the ALJ determined that Plaintiff retained an RFC for a

range of light work with additional limitations.  TR 21-26.  Specifically, the ALJ found:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b).  She can lift and/or carry 20 pounds occasionally and
> ten pounds frequently.  She can sit, stand, or walk six hours total
> each. She would be better if offered a sit/stand option.  She can
> perform no overhead work with the left upper extremities.  She can
> occasionally perform all postural activities.  She can have no
> exposure to hazards in the workplace, including excessive
> (jackhammer level) noise or excessively bright lights.  She is
> limited to simple unskilled work consisting of one to two step tasks
> and instructions.  She can attend to and complete such tasks and
> instructions.  She can handle occasional change in the workplace,
> routine setting, or location.  She can perform no production pace or
> quota type work.

TR 21.

As can be seen, the ALJ specifically included in her RFC determination, the following

functional limitations: (1) Plaintiff can lift and/or carry 20 pounds occasionally and ten pounds

frequently; (2) Plaintiff can sit, stand, or walk six hours total each; (3) Plaintiff would be better if

offered a sit/stand option; (4) Plaintiff can perform no overhead work with the left upper

extremities; (5) Plaintiff can occasionally perform all postural activities; (6) Plaintiff can have no

exposure to hazards in the workplace, including excessive (jackhammer level) noise or

excessively bright lights; (7) Plaintiff is limited to simple unskilled work consisting of one to two

step tasks and instructions; (8) Plaintiff can attend to and complete such tasks and instructions;

(9) Plaintiff can handle occasional change in the workplace, routine setting, or location; and (10) Plaintiff can perform no production pace or quota type work. *Id.* Moreover, the ALJ's decision narrative addresses the evidence and resulting functional limitations. *See* TR 19-28. The ALJ properly evaluated the evidence and complied with SSR 96-8p in making her RFC determination, and the Regulations do not require more.

Plaintiff contends that "the ALJ failed to include substantial limitations in the RFC finding correlating to symptoms and limitations which were well-documented in the record." Plaintiff, however, fails to identify which "substantial limitations" that "were well-documented in the record" the ALJ omitted, beyond those arguments she raised in her earlier statements of error. As demonstrated in the discussion of the statements of error above, the ALJ properly evaluated the evidence and incorporated the restrictions she felt were consistent with, and supported by, the evidence of record.

Finally, while Plaintiff argues that an ALJ commits reversible error if the ALJ does not explicitly conduct a function-by-function assessment that discusses each function separately, the law in the Sixth Circuit has not so held. "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing," as there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Beason v. Comm'r of Soc. Sec.*, No. 1:13-CV-192, 2014 WL 4063380, at *13 (E.D. Tenn. Aug. 15, 2014) (*quoting Delgado*, 30 F. App'x at 547-48.). Significantly, SSR 96–8p states that the ALJ must *consider* each function separately; it does not state that the ALJ must *discuss* each function separately in the narrative of the decision. Not only did the ALJ in the case at bar explicitly state that she had considered the entire record carefully, but as has been

demonstrated in the statements of error above, the ALJ's articulated rationale throughout her decision so evidences. The ALJ's RFC determination was reached in accordance with the Regulations and supported by the evidence of record. Thus, the ALJ's RFC determination was proper and Plaintiff's argument on this point fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge